**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT ELLIOTT | * | |
| | * | Civil Action No. CCB-20-2963 |
| v. | * | |
| | * | |
| MARYLAND CORRECTIONAL | * | |
| TRAINING CENTER, *et al.* | * | |
| | * | |

\*\*\*\*\*

**MEMORANDUM**

This employment dispute concerns the discharge of the plaintiff Robert Elliott. Elliott raises claims for breach of contract, wrongful discharge, and tortious interference against the Maryland Department of Public Safety and Correctional Services ("DPSCS") and the Maryland Correctional Training Center ("MCTC") and Hagerstown Community College ("HCC"). Before the court are several related motions: HCC's motion to dismiss (ECF 8); MCTC's and DPSCS's motion to dismiss (ECF 12); and Elliott's motion to waive the notice requirements of the Local Government Tort Claims Act (ECF 16). The matter has been fully briefed, and no hearing is required. *See* Local Rule 105(6). For the reasons discussed herein, the motions to dismiss will be granted, Elliott will be granted leave to amend his wrongful discharge claim against MCTC, and the motion to waive the notice requirements will be denied as moot.

**FACTS AND PROCEDURAL HISTORY**

Elliott executed a contract on a yearly basis with HCC, which subcontracted with MCTC—a correctional facility operated by DPSCS—to have Elliott work as as a masonry instructor. (ECF 2, Am. Compl. at ¶¶ 1, 3). Specifically, Elliott was to provide 600 hours of instruction over six months to prisoners at MCTC who were working toward their journeyman masonry certificate. (*Id.* at ¶ 4). The certificate required 2,400 total hours of instruction. (*Id.*). Elliott alleges that he was not compensated for enough work hours to provide the required instruction to his students.

(*Id.* at ¶ 5). Instead, he contends his supervisor advised him to record six hours of instruction per day, even though he was only able to teach between four-and-a-half and five hours each day. (*Id.* at ¶ 6). Elliott "refused to fraudulently report" the additional instruction time. (*Id.* at ¶ 7).

Midway through one of his yearly contracts, on January 2, 2019, Elliott was terminated by MCTC for allegedly sneaking a knife into the facility and "because of his older age," which the Warden intimated meant "he could be intimidated to do things others might not." (*Id.* at ¶¶ 8, 11). Elliott was told he was captured on video sneaking a knife into prison, but he has not been shown the video. (*Id.* at ¶ 9). He admits that he does regularly carry a pen knife, but alleges that he never carried it past the security checkpoint. (*Id.* at ¶ 10).

HCC allegedly "endorsed MCTC's termination" by no longer employing or compensating Elliott. (*Id.* at ¶ 13). As a result, Elliott lost the remainder of his yearly contract, worth $15,778, as well as the additional $31,556 for each year he would have chosen to renew his contract. (*Id*. at ¶¶ 14–15).

Elliott filed suit in the Circuit Court of Washington County, Maryland on September 2, 2020, raising breach of contract and wrongful discharge claims against MCTC and HCC, and a tortious interference claim against MCTC.[1] (ECF 1, Notice of Removal). The defendants removed the action to this court on October 13, 2020. (*Id.*). HCC filed a motion to dismiss (ECF 8) on October 20, 2020; MCTC and DPSCS filed a motion to dismiss (ECF 12) on October 29, 2020; and—prompted by an argument raised in HCC's motion—Elliott filed a motion to waive the notice requirements of the Local Government Tort Claims Act (ECF 16) on November 24, 2020. The matter is now fully briefed and ready for resolution.

---

[1] Though DPSCS was listed as a named defendant in this action, the amended complaint raises no claims against DPSCS and contains no allegations of direct liability against DPSCS.

**STANDARD OF REVIEW**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted only if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 155 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carrol Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707

F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

Elliott raises three counts against MCTC and HCC—(1) breach of express contract, (2) breach of implied contract, and (3) wrongful discharge—as well as a fourth count against just MCTC—(4) tortious interference with a contract. The court will address the contract claims and then turn to the tort claims.

### I.     Breach of Contract Claims

The defendants argue that Elliott's breach of contract claims are barred by the statute of limitations and by sovereign immunity.[2] Maryland has enacted a limited waiver of its sovereign immunity for actions which are based on a written contract executed by an official for the State, *see* Md. Code Ann., State Gov't §12-201, and filed within one year of the later of the date on which the claim arose or the completion of the contract, *see id.* § 12-202. *See also State v. Sharafeldin*, 382 Md. 129, 148 (2004) (one-year filing deadline for contract claims is a limited waiver of sovereign immunity and absolute precondition to suit rather than a mere statute of limitations).

In this case, Elliott alleged he was terminated on or about January 2, 2019. (ECF 2, Am. Compl. at ¶ 8). His filing deadline was therefore January 2, 2020, though he did not file this action until August 5, 2020.[3] In defense of this untimely filing, Elliott argues that the requirements of

---

[2]     Elliott does not contest that all defendants in this action are entities of state government entitled to sovereign immunity. MCTC is a prison within the jurisdiction of DPSCS, which is a principal department of state government. *See* Md. Code Ann., Corr. Servs. § 2-101. And HCC, which is controlled by the state of Maryland, is treated as a state entity. *See Samuels v. Tschechtelin*, 135 Md. App. 483, 521 (2000).

[3]     Elliott contends he filed the action in July 2020, but the complaint in the state court file on the court's docket shows a date of August 5, 2020. (*See* ECF 11-1 at 1).

Section 12-202 were tolled by his compliance with the procedures outlined in the Maryland Tort Claims Act. That act provides that a claimant may not initiate an action against the government unless: (1) the claimant submits a written claim to the State Treasurer within a year after the injury that is the basis of the claim, (2) the Treasurer denies the claim finally, and (3) the action is filed within three years after the cause of action arises. *See* Md. Code Ann., State Gov't § 12-106(b). Because Elliott submitted his claims to the Treasurer and received a denial on September 19, 2019, (*see* ECF 15-1), he contends that he had three years from that date—or until September 19, 2022, to file this action.

However, Elliott does not cite to any cases suggesting that compliance with the Maryland Tort Claims Act acts to toll Maryland's limited waiver of sovereign immunity in contract actions, nor can this court find any. Instead, a plain reading of Title 12 of the State Government chapter of the Maryland Code indicates that the legislature intended for one procedure to apply to contract claims (Subtitle 2—Actions in Contract) and another to apply to tort claims (Subtitle 1—Maryland Tort Claims Act). A litigant wishing to assert both contract and tort claims therefore must comply with each procedure.

This Elliott did not do. The court therefore must dismiss his breach of express contract and breach of implied contract claims against all defendants.[4]

## II.    Wrongful Discharge

Next, the defendants argue that Elliott has failed to state a claim for wrongful discharge.[5]

---

[4]      Additionally, Section 12-202 waives sovereign immunity only for claims based on a written contract, and Elliott cites no authority demonstrating that Maryland has waived sovereign immunity for claims based in implied contracts.

[5]      The tort of wrongful discharge is a "narrow exception" to the principle that, in the at-will employment context, a jury may not review any aspect of an employer's decision to terminate an employee. *See King v. Marriott Int'l, Inc.*, 160 Md. App. 689, 699 (2005). In this case, Elliott's

To state a claim for wrongful discharge under Maryland law, an at-will employee must allege: (1) he was discharged; (2) the discharge violated a clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451 (2017).

With respect to the first element, MCTC argues that it did not have an employee-employer relationship with Elliott such that Elliott could be considered an "employee" who was discharged. MCTC is correct that the tort of wrongful discharge may not be brought by independent contractors. *See Cogan v. Harford Mem. Hosp.*, 843 F. Supp. 1013, 1022 (D. Md. 1994) (granting summary judgment to the defendant on a wrongful discharge claim where the record presented no evidence that the defendant exercised control over the plaintiff's performance and manner of work); *Felichko v. Schecter*, No. RDB-18-1392, 2019 WL 1318109, at *12 (D. Md. Mar. 22, 2019) (wrongful discharge claim dismissed where plaintiff did not allege employer-employee relationship and no employment contract was alleged or provided). In this case, the amended complaint states that Elliott was a "contract employee," (ECF 2 at ¶ 18), and the employment contract—between HCC and Elliott, to which MCTC was not a party—states that Elliott is "hereby employed by [HCC] subject to the . . . assignment [to MCTC]," (*see* ECF 12-2, Ex. A). It is not clear from the complaint or from Elliott's contract with HCC what the nature of that assignment was and what agreement, if any, existed between MCTC and HCC. Under Maryland law, the existence of an employer-employee relationship is typically a question of fact to be resolved by

complaint alleges his contract contained a for-cause provision, but the contract—attached to HCC's motion to dismiss—instead provides that he could be terminated with thirty days' notice. (*See* ECF 8-2). The Court may rely on this document, the authenticity of which has not been challenged, insofar as it is integral to the complaint. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015). Further, Elliott's complaint also states that when his contract was renewed from year to year it made his employment at-will. (*See* ECF 2 at ¶ 28).

the jury, unless the essential terms and manner of employment are undisputed, in which case it is a question of law for the court. *See Tyson Farms, Inc. v. Uninsured Employers' Fund*, 471 Md. 386, 416 (2020); *see also Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 272–73 (2015). The most important factor to consider in determining whether an employer-employee relationship exists is whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done. *See Perry*, 221 Md. App. at 272. Here, construing the allegations in the light most favorable to Elliott, there are some allegations that MCTC exercised control over Elliott's employment: he alleges that his supervisor—presumably at MCTC—instructed him to record a specific number of hours of instruction, and when he refused to do so, he was terminated by MCTC. (*See* ECF 2, Am. Compl. at ¶¶ 6–9). But the court does not decide this issue today, as—for the reasons explained below— Elliott has failed to plausibly allege a violation of a clear mandate of public policy.

A public policy is a principle of the law "which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good." *King v. Marriott Int'l. Inc.*, 160 Md. App. 689, 700 (2005) (internal quotation omitted). There are two limitations on a court's ability to pronounce new public policy mandates: the public policy must (1) be reasonably discernible from prescribed constitutional or statutory mandates and (2) vindicate an otherwise civilly unremedied public policy violation. *See Yuan*, 452 Md. at 452–54. Accordingly, Maryland courts have found a violation of a clear public policy only in two general situations: (1) where an employee was fired for refusing to violate the law or the legal rights of a third party and (2) where an employee has been terminated for exercising a specific legal right or duty. *King*, 160 Md. App. at 700–01; *see also, e.g., Kessler v. Equity Mgmt., Inc.*, 82 Md. App. 577, 584–85 (1990) (violation of public policy where employee fired for refusing to commit invasion of privacy);

*Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 486–87 (1991) (violation of public policy to fire employee for seeking redress from co-worker for sexual harassment). Maryland courts have been clear that "there must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing prohibiting, or protecting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation." *King*, 160 Md. App. at 702 (quoting *Sears, Roebuck & Co. v. Wholey*, 139 Md. App. 642, 661 (2001)). This serves to "limit[] judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source." *Id.* (internal quotations omitted). To that end, a plaintiff must "plead with particularity" the source of the public policy allegedly violated by his or her termination. *Id.* at 703 (internal quotation omitted).

In this case, Elliott contends that his termination "was based on violations of substantial public policy" including the public policy against (1) falsifying hours for professional certifications, (2) defrauding the public, and (3) endangering public safety by certifying as masons those who lack sufficient training. (ECF 2, Am. Compl. at ¶ 29). His complaint implies, even if it does not assert, that he was fired because he refused to overreport the number of hours he instructed his masonry students each day. However, Elliott's amended complaint includes no allegations that HCC—even if it was told why Elliott was fired—knew the Warden's claim that he smuggled a knife into the prison was false or pretextual.[6] For this reason, Elliott's claim against HCC fails.[7]

---

[6] To the extent that Elliott relies on allegations of age discrimination to support his wrongful discharge claim, that is not a valid basis to support such a claim because, at a minimum, the federal Age Discrimination in Employment Act exists to remedy such discrimination. *See Yuan*, 452 Md. at 453 (noting that the generally accepted reason for recognizing the tort of wrongful discharge is to vindicate an otherwise civilly unremedied public policy violation).

[7] The court therefore need not reach HCC's additional argument that this claim should be dismissed for failure to comply with the notice provisions of the Local Government Tort Claims

*See Adler v. Am. Std. Corp.*, 291 Md. 31, 47 (1981) (Maryland recognizes wrongful discharge action where "motivation for the discharge contravenes some clear mandate of public policy").

And as to MCTC, Elliott's amended complaint does not identify a clear constitutional, statutory, or regulatory mandate from which this court could reasonably discern Elliott's discharge violated a specific public policy. *Compare Magee v. DanSources Tech. Servs., Inc.*, 137 Md. App. 527, 572 (2001) (18 U.S.C. §§ 24 and 1347, which makes it a crime to knowingly defraud a health care benefit program, are sufficiently clear public policy mandates against filing fraudulent health insurance claims) *with King*, 160 Md. App. at 703–04 (allegation that Maryland has a public policy encouraging fiduciaries to object to transactions not in the interest of their beneficiaries was insufficient to identify a source of public policy because it lacked a citation to any case, statute, or regulation). It is not enough to allege in general terms that the state of Maryland has public policies in favor of public safety or against fraud; pleading with particularity is required. The court will therefore dismiss the wrongful discharge claim against MCTC but—for the reasons explained *infra*, Section IV—the court will grant leave to amend.[8]

### III.   Tortious Interference

Finally, MCTC argues that Elliott has failed to state a claim for tortious interference. To state a claim for tortious interference with a contract under Maryland law, a plaintiff must allege: (1) a contract exists between the plaintiff and a third party; (2) the defendant knows of the contract; (3) the defendant intentionally interferes with that contract; (4) the third party breaches that contract; and (5) the plaintiff suffers damages from the breach. *Coastal Labs., Inc. v. Jolly*, --- F.

---

Act. Nor need the court address the merits of the plaintiff's motion to waive the requirements of that act. (ECF 16). That motion will therefore be denied as moot.

[8]     MCTC raises additional arguments concerning, for example, the third element of a wrongful discharge claim. The court need not address those arguments given that Elliott's failure to satisfy the second element is fatal to his claim.

Supp. 3d. ----, No. RDB-20-2277, 2020 WL 6874332, at *13 (D. Md. Nov. 23, 2020). But where, as here, the contract that has allegedly been interfered with is an at-will contract, the tort is properly analyzed as one for interference with economic relations. *See Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 693 (D. Md. 2012); *see also Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297–98 (1994) (explaining that since neither party has a vested interest in the continuation of an at-will contract, the effect of the exercise of the option to cancel a contract is more akin to interference with a prospective economic relationship).

To state a claim for interference with economic relations, a plaintiff must allege: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss. *See Paccar, Inc.*, 905 F. Supp. 2d at 695. "Tortious or deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There must also be proof that the defendant's conduct . . . was accomplished through *improper means*." *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 242 (2005) (internal quotation omitted) (emphasis in original). Therefore, "to recover for tortious interference with business or contractual relationships, the defendant's conduct must be independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* at 242–43 (internal quotation omitted). This requires pleading conduct amounting to "violence or intimidation, defamation, injurious falsehoods or other fraud, violation of the criminal law, and institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* at 243 (internal quotation omitted).

MCTC argues that Elliott has not alleged wrongful or unjustified interference in a manner which would satisfy the third element of the tort. It points out, correctly, that the complaint states

the Warden claimed Elliott was captured on video sneaking a knife into the facility. (*See* ECF 2, Am. Compl. at ¶¶ 8–9). It argues this "negates a finding that Warden Dovey['s] action was tortious, wrongful or without justification". (ECF 12, Mot. to Dismiss at 11). However, at this stage of the proceedings, the court is not permitted to weigh evidence or to make a finding as to whether Elliott was fired for the stated but allegedly pretextual reason of bringing contraband into the facility or for the reason that he refused to falsify his hours. Rather, the question is whether, after all well-pleaded allegations are construed in the light most favorable to Elliott, he has plausibly alleged his firing was done with unlawful purpose and without right or justifiable cause. *See U.S. ex rel. Nathan*, 707 F.3d at 455.

Elliott contends that the Warden's wrongful conduct includes the common law tort of defamation. However, the complaint does not explicitly allege defamation. Nor is it possible to infer allegations of defamation from the face of the complaint, as defamation requires, among other elements, making a defamatory statement to a third party. *See S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005). Elliott does not allege that the Warden ever told HCC—or anyone else—that he had been fired for sneaking a knife into the facility.

Next, Elliott contends in his opposition that the amended complaint can be read to suggest that the Warden "intentionally lied about [Elliott] sneaking contraband in to justify removing him from MCTC because he wouldn't falsify his student time sheets." (ECF 18, Opp'n at 8). This is apparently a reference to statements made by the Warden to Elliott during the meeting in which he was terminated. (*See* ECF 2, Am. Compl. at ¶¶ 8–11 ("Plaintiff was called into a room at the MCTC and told by Warden Dovey that he was being terminated for an act he never committed")). Construed in the light most favorable to Elliott, the court agrees that the complaint alleges the Warden intentionally lied about the reason for Elliott's termination. But Elliott cites no caselaw

indicating that lying to an employee about the true reason he is being fired is sufficient to satisfy the third element of a tortious interference claim under Maryland law. Nor can the court locate any.[9] Accordingly, the court will dismiss the tortious interference claim against MCTC.

## IV.   Leave to Replead

In his opposition to the motion to dismiss, Elliott has requested leave to replead his breach of contract and wrongful discharge claims should the court dismiss them. (*See* ECF 15, Opp'n at 3, 7). Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely give leave to file amended pleadings. District courts therefore should liberally allow amendment and deny leave to amend only in cases of prejudice, bad faith, or futility. *See In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Amendment would be futile where an amended complaint cannot survive Rule 12(b)(6) scrutiny. *See id.* In this case, no amendment can cure the fact that Elliott's breach of contract claims are time-barred. But, where Elliott may be able to cure the deficiencies in his wrongful discharge claim against MCTC by identifying a specific mandate of public policy which his termination violated and by clarifying the nature of his employment status with MCTC, granting leave to amend will give effect to the "policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Leave to amend Elliott's wrongful discharge claim against MCTC will therefore be granted.

---

[9]     The closest case appears to be *Koch v. Specialized Care Servs., Inc.*, No. MJG-04-1395, 2005 WL 8156805 (D. Md. Apr. 1, 2005). In that case, the defendants argued at summary judgment that the plaintiff's allegations that the defendants lied about whether the plaintiff had resigned or quit were legally insufficient to state a claim for tortious interference. *Id.* at *8. The court did not explicitly endorse or reject that legal argument, but held that there was an issue of fact as to whether the defendants' actions amounted to injurious falsehoods or fraud. *See id.* In this case, as already explained, Elliott does not plausibly allege that any of the defendants used a wrongful means such as defamation. Nor does Elliott argue that the defendants are liable for injurious falsehood or fraud.

**CONCLUSION**

For the reasons stated herein, the defendants' motions to dismiss (ECF 8, 12) will be granted, but the court will grant Elliott an opportunity to amend his complaint to state a claim for wrongful discharge against MCTC. And the court will deny as moot the plaintiff's motion for leave to proceed without complying with the procedures of the Local Government Tort Claims Act (ECF 16). A separate order follows.


   May 27, 2021                                        /S/                    
Date                                                         Catherine C. Blake
                                                             United States District Judge

13