IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT ELLIOTT | * | |
| v. | * | Civil Action No.  CCB-20-2963 |
| MARYLAND CORRECTIONAL TRAINING CENTER, et al. | * | |

************

## MEMORANDUM

Pending before the court is a motion for leave to alter or amend a court order and to file an amended complaint (ECFs 23, 24 Mot. to Alter/Amend) brought by plaintiff Robert Elliott, and a motion to dismiss brought by defendants Maryland Correctional Training Center and the Maryland Department of Public Safety and Correctional Services (ECF 29, Mot. to Dismiss). The motion to alter/amend has been fully briefed (ECFs 30, Opp'n; 35, Reply), and the plaintiff has responded to the motion to dismiss (ECF 32). No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will deny the plaintiff's motion, and grant the defendants' motion.

## BACKGROUND

This litigation arises from an employment dispute between plaintiff Robert Elliott and the Maryland Correctional Training Center ("MCTC"), located in Washington County, Maryland. The alleged facts will be taken from the proposed second amended complaint (ECF 26). For an unspecified time up to January 2019, Mr. Elliott was an employee of Hagerstown Community College ("HCC"), where he was a masonry instructor. (*Id.* ¶ 1). Mr. Elliott executed a contract on a yearly basis with HCC, which subcontracted with MCTC, a correctional facility operated by Maryland Department of Public Safety and Correctional Services ("DPSCS"), for Mr. Elliot to provide 600 hours of instruction to prisoners at MCTC who were working toward their journeyman

1

masonry certificates. (*Id.* ¶ 5). Mr. Elliott alleges that he was not compensated for enough work hours to provide the required instruction to his students. (*Id.* ¶ 9). Instead, he contends his supervisor advised him to record six hours of instruction per day, even though he was only able to teach between four-and-a-half and five hours each day. (*Id.* ¶ 10). Mr. Elliott "refused to fraudulently report" the additional instruction time. (*Id.* ¶ 11).

Approximately halfway through one of his yearly contracts, on January 2, 2019, Mr. Elliott was terminated by MCTC for allegedly sneaking a knife into the facility and "because of his older age," which the Warden intimated meant "he could be intimidated to do things others might not." (*Id.* ¶¶ 12, 15). Mr. Elliott was told he was captured on video sneaking a knife into prison, but he has not been shown the video. (*Id.* ¶ 13). He admits that he does regularly carry a pen knife, but alleges that he never carried it past the security checkpoint. (*Id.* ¶ 14). Upon being notified of this incident, HCC terminated Mr. Elliot's annual contract, worth $15,778, as well as $31,556 for each year he would have chosen to renew his contract. (*Id*. ¶¶ 18, 21).

Mr. Elliott filed suit in the Circuit Court of Washington County, Maryland on September 2, 2020, raising breach of contract and wrongful discharge claims against MCTC and HCC, and a tortious interference claim against MCTC.[1] (ECF 1, Notice of Removal). The defendants removed the action to this court on October 13, 2020. (*Id.*). HCC filed a motion to dismiss (ECF 8) directed at the operative complaint (ECF 2) on October 20, 2020; MCTC and DPSCS filed a motion to dismiss (ECF 12) on October 29, 2020. Prompted by an argument raised in HCC's motion, Elliott filed a motion to waive the notice requirements of the Local Government Tort Claims Act ("LGTCA") (ECF 16) on November 24, 2020. On May 27, 2021, the court granted the defendants' motions to dismiss, and denied as moot the plaintiff's motion for leave to proceed without

---

[1] Though DPSCS was listed as a named defendant, the first amended complaint raised no claims against DPSCS and contained no allegations of direct liability against DPSCS.

compliance with the LGTCA. (ECFs 20, 21). The court simultaneously granted Mr. Elliot leave to file an amended complaint curing the stated deficiencies in his wrongful discharge claim against MCTC. (*Id.*).

On June 24, 2021, Mr. Elliot timely moved for leave to file a second amended complaint and to amend the court's May 27, 2021 order to permit broader amendment of his complaint. (ECFs 23, 24, 26). In his motion to amend, Mr. Elliot requested to name Warden Thomas Dovey in his personal capacity as an additional defendant in the suit. (ECF 24 at 2). As noted, the defendants have opposed the motion to alter/amend and have filed a motion to dismiss. (ECFs 29, 30).

The court will first address Mr. Elliot's motion to amend, then turn to the defendants' motion to dismiss.

## DISCUSSION

I. **Amending the Prior Judgment AND THE COMPLAINT**

   a. **Standard of Review – Rule 59**

Federal Rule of Civil Procedure 59(e) permits litigants to file to "alter or amend" a court's judgments within twenty-eight days of its entry. Fed. R. Civ. P. 59(e). "Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (citing *Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006) (internal quotations omitted).

Mr. Elliot does not specifically identify which ground(s) for amendment he believes applies to the court's May 27, 2021 order, but essentially argues that under Rule 15 he should be permitted to amend other claims in this complaint in addition to the wrongful discharge claim. For ease of

analysis, the court will examine the additional claims in his proposed second amended complaint under Rule 15, and will then examine the proposed wrongful discharge claim under Rule 12(b)(6).

### b. Rule 15 Amendment

Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading. . . with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 15 further provides that "[t]he court should freely give leave when justice so requires." *Id.* The Fourth Circuit has clarified that courts should liberally allow amendment, and leave to amend should be denied only if it "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

A proposed amendment is futile when it "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *see also Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 267-68 (4th Cir. 2016) (per curiam) (affirming district court's denial of leave to amend because the amended complaint would not survive a Rule 12(b)(6) motion to dismiss).[2]

### i. Inclusion of Warden Dovey as A Defendant Is Futile

As "state personnel," Warden Dovey is entitled to public official immunity for any alleged tortious acts or omissions. *See* Md. Code Ann., State Gov't § 12-101 (defining "state personnel" to include state employees paid by the Office of the Comptroller); *see also* Cts. & Jud. Proc. Art. § 5-522. Because Warden Dovey, by prohibiting Mr. Elliott from entering the facility after he was identified by its employees as having violated the institution's contraband policy, was alleged to

---

[2] Unpublished cases are cited not for any precedential value, but for the persuasiveness of their reasoning.

have acted within the scope of his duties as Warden, in a discretionary capacity, and without malice, he is entitled to public official immunity granted by the Maryland Tort Claims Act ("MTCA"). *See James v. Prince George's County*, 288 Md. 315, 323 (1980).

Mr. Elliott argues that he properly alleges that Warden Dovey acted with malice and is therefore not entitled to public official immunity. (*See* ECF 26 ¶¶ 30, 40) (alleging that Warden Dovey "intentionally publish[ed]… false and defamatory statements against Plaintiff," which he "knew were false" or that he "direct[ed] another to do so"). These allegations, however, are conclusory, and Mr. Elliott offers no specifics as to why Warden Dovey would have known the report that Mr. Elliot violated the contraband policy was false, or otherwise acted with gross negligence under the circumstances. Without "alleg[ing] with some clarity and precision those facts that make the act malicious [or grossly negligent]," Mr. Elliott cannot overcome a motion raising MTCA immunity. *Manders v. Brown*, 101 Md. App. 191, 216 (1994), *cert. denied*, 336 Md. 592 (1994) (citation omitted). Accordingly, Mr. Elliot will not be permitted to amend his complaint to include Warden Dovey as a defendant.

### ii. Amendment of the Tortious Interference Claim is Futile

Mr. Elliott next requests leave to amend his claim of tortious interference of contract or business relations against MCTC. Specifically, he wishes to claim that MCTC authored defamatory statements to his employer, HCC. (ECF 26-1 ¶ 27).

As the court explained in its May 2021 memorandum, Mr. Elliott's tortious interference claim failed as a matter of law when predicated on such defamation. There, the court noted that, in order to meet the elements of defamation, the plaintiff must specifically allege the element of making a defamatory statement to a third party. (ECF 20 at 11) (citing *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005)). As was the case in the first Amended

Complaint, the Second Amended Complaint fails to make any allegation that Warden Dovey or any other employee of MCTC ever told HCC that Mr. Elliott had been fired for bringing a penknife into the facility.

Because the proposed second amended complaint fails to properly allege defamation under Maryland law, amendment would be futile. and leave will not be granted with respect to Count IV.

### iii. Amendment with Respect to DPSCS Is Futile

Finally, Mr. Elliott requests leave to amend the complaint to include a claim that DPSCS is liable as supervisor for the actions of its agent, MCTC. (ECF 26, Count III). The court previously observed that, while Mr. Elliott named DPSCS as a defendant, the first amended complaint raised no claims or allegations of direct liability against it. (ECF 20 at 2 n.1).

No supervisory liability can attach to a principal without the existence of an agent's underlying liability. As explained below, Mr. Elliott's second amended complaint fails to state a claim for wrongful termination upon which relief can be granted. Without this or another viable claim against MCTC, no supervisory liability can attach to DPSCS as principal, and such an amendment would be futile. The motion to amend with respect to Count III will thus be denied.

As the court finds that the additional claims sought to be amended or added to the proposed second amended complaint would not survive a motion dismiss, amendment would be futile, and accordingly, Mr. Elliot's Rules 59(e) and 15 motion will be denied.

## II. Motion to Dismiss

The court next addresses the defendants' Rule 12 motion to dismiss for failure to state a claim of wrongful discharge. In its May 27, 2021 memorandum opinion, this court granted Mr. Elliott leave to correct deficiencies in his claim for wrongful discharge against MCTC: namely, to

identify with particularity the specific mandate of public policy which his termination violated and to clarify his employment status with MCTC. (ECF 20 at 9, 12).

### a. Legal Standard

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

### b. Wrongful Discharge

Mr. Elliot's second amended complaint again alleges that MCTC wrongfully discharged him from his employment. To state a claim for wrongful discharge under Maryland law, an at-will employee must allege: (1) he was discharged; (2) the discharge violated a clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451 (2017).

While MCTC disputes that it was Mr. Elliott's employer for the purposes of a wrongful employment tort, *intra alia*, the court need not address all the arguments raised in the defendants' motion to dismiss. Rather, Mr. Elliott's claim fails as a matter of law, because the mandates of public policy enumerated in the second amended complaint cannot support a wrongful termination claim.

A public policy is a principle of the law "which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good." *King v. Marriott Int'l. Inc.*, 160 Md. App. 689, 700 (2005) (internal quotation omitted). Maryland courts have found a violation of a clear public policy only in two general situations: (1) where an employee was fired for refusing to violate the law or the legal rights of a third party and (2) where an employee has been terminated for exercising a specific legal right or duty. *Id.* at 700–01. Maryland courts have been clear that "there must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing prohibiting, or protecting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation." *Id.* at 702 (quoting *Sears, Roebuck & Co. v. Wholey*, 139 Md. App. 642, 661 (2001)). This serves to "limit[] judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source." *Id.* (internal quotations omitted). To that end, a plaintiff must "plead with particularity" the source of the public policy allegedly violated by his or her termination. *Id.* at 703 (internal quotation omitted).

Mr. Elliott offers five potential public policies which he alleges MCTC's conduct violated. These policies, however, do not amount to the type of clear constitutional, statutory, or judicial pronouncements required to undergird the tort of wrongful discharge. Each will be addressed in turn.

8

### i. Public Policy Against Engaging in Fraud

First, Mr. Elliott contends that MCTC "falsif[ied] hours needed for certifications . . . thereby inducing the acquisition of certifications for prisoners under material false pretenses," which contravenes Maryland's "public policy against engaging in civil fraud" (ECF 26 ¶ 26(a)). While Maryland has an interest in preventing fraud, Mr. Elliott does not cite any reference to the "particularized pronouncement" of such a policy in Maryland law. *King*, 160 Md. App. at 702 (internal citation omitted).[3] It thus cannot support a claim of wrongful termination, as it is too general, conclusory, and vague to amount to a "prima facie showing that the claimed misconduct contravened . . . the public policy of [Maryland]." *Adler v. American Standard Corp.,* 291 Md. 31, 44 (1981).

### ii. Public Policy Against Insurance Fraud

Second, Mr, Elliott contends that MCTC violated Maryland policy against insurance fraud, "insomuch as contracting companies, in their insurance applications, make representations that its [sic] employees are certified contractors (in this case, journeyman masons), which presumes a certain number of training hours which would be false based on MCTC's fraudulent conduct" as codified by Md. Code Ann., Ins. § 27-406. (ECF 26 ¶ 26(b)).

Despite identifying a state statute against insurance fraud, Mr. Elliott's complaint is bereft of factual allegations that connect the alleged inappropriate actions of the MCTC to such fraud. Nowhere in the complaint does the plaintiff identify how credentialing affects insurance premiums and policies, describe how MCTC's discharge would impact present or future insurance contracts,

---

[3] In his response brief, Mr. Elliott alludes to the tort of fraud being well-established in Maryland, citing *Suburban Properties Management, Inc. v. Johnson*, 236 Md. 455, 460, 204 A.2d 326 (1964). The mere recognition of a cause of action in tort, however, fails to suffice to meet the plaintiff's burden to establish that the state has announced a policy which can support a claim of wrongful discharge. *See King*, 160 Md. App. at 700-701.

9

or list which insurers, if any, may be affected. Moreover, Mr. Elliott fails to identify any judicial opinion identifying this statute as one of the limited number of actionable public policies in the context of wrongful discharge. Nor does he express why the statute should apply in the context of a prisoner accreditation course without an identifiable third party insurer or future employer who would rely on an insurer's assessment. "There are many public policies implicated in the employer-employee relationship, but few of them can form the basis for a wrongful discharge tort." *Yuan v. Johns Hopkins Univ.*, 227 Md. App. 554, 568 (2016); *see also Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 497 (1995) ("[W]e have never held that every statute constitutes a clear mandate of public policy for purposes of the tort of wrongful discharge. Indeed, were we to so hold, we would open the floodgates of litigation."). As insurance fraud is both insufficiently pled and too removed from the facts at hand, it cannot constitute the actionable public policy violation required to support a claim for wrongful discharge in this case.

### iii. Public Policy Against Obtaining State Money Under Artifice Through U.S. Mail

Third, Mr. Elliott claims that MCTC violated Maryland public policy against permitting a "scheme or artifice" intended to "obtain money from the state through the fraudulent pretense of obtaining vocational certifications for prisoners and utilized mail in order to do so," in violation of 18 U.S.C. § 1341. (ECF 26 ¶ 26(c)). While federal law may serve as the basis for Maryland public policy, *see Adler v. Am. Standard Corp.*, 538 F. Supp. 572, 578-79 (D. Md. 1982), the general federal mail fraud statute is not the kind of specific policy that would be recognized as a basis for a wrongful discharge claim. Mr. Elliott, in his response brief, argues that this statute, taken with the others listed, contributes to a "substantial public policy against defrauding the public in the state of Maryland," (ECF 32 at 8), but such a generalized policy statement cannot serve as the basis for the alleged tort. A generalized fraud statute "falls short of providing the unmistakably

clear mandate of public policy" that Maryland courts have required to support a wrongful discharge claim. *Cf. Parks v. Alpharma, Inc.*, 421 Md. 59, 84 (2011) (holding the Federal Trade Commission Act's (15 U.S.C. § 45), prohibition of "unfair or deceptive acts or practices in or affecting commerce" insufficiently specific to constitute a mandate of Maryland public policy in a wrongful discharge claim); *accord Yuan*, 227 Md. App. at 568-69.

    iv.   **Public Policy Against Falsification of Material Fact**

Fourth, Mr. Elliott asserts that MCTC acted in violation of Maryland public policy and 18 U.S.C. § 1001 by "concoct[ing] a scheme to obtain vocational certification without the requisite number of training hours by falsifying said hours through the vocational training instructors." (ECF 26 ¶ 26(d)). The statute in question prohibits the making of "materially false, fictious, or fraudulent statement[s] or representation[s]" within the jurisdiction of the government of the United States. 18 U.S.C. § 1001(a), (a)(3). For the same reasons as stated above in regard to the mail fraud statute, § 1001 does not set forth a sufficiently clear mandate of public policy to support a wrongful discharge claim under the circumstances of this case.

    v. **Public Policy Against Endangering Public Safety**

Mr. Elliott's fifth and final proffer of a public policy basis for wrongful discharge is that MCTC's alleged conduct endangers the public safety by certifying masons who lack the training hours necessary for such certificates. (ECF 26 ¶ 26(e)). As in the support of his policy against fraud, Mr. Elliott fails to cite to any specific authority pronouncing this public policy. Lacking supporting authority and a specific mandate, this proposed policy also fails to serve as a basis for the second element of the tort of wrongful discharge under Maryland law. *See Adler*, 291 Md. at 44.

As none of the five public policy rationales offered by Mr. Elliott suffice to support his sole remaining claim of wrongful discharge, the defendants' motion to dismiss will be granted.[4] Additionally, Mr. Elliott's request to amend his complaint a third time to cure any deficiency will be denied as futile, because the claims fails as a matter of law.

## CONCLUSION

Because the motion to alter or amend the court's order and for leave to file a second amended complaint is futile with respect to all counts, it will be denied. The defendants' motion to dismiss will be granted.

A separate Order follows.

_____3/17/2022_____   _____/S/_____
Date                              Catherine C. Blake
                                  United States District Judge

---

[4] The defendants' motion to dismiss is, in the alternative, a motion for summary judgment. As the court finds that Mr. Elliott's remaining claims fail as a matter of law, there is no need to consider the evidentiary record or rule on the defendants' motion as one for summary judgment.